# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| OLIVER AND COMPANY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:25-cv-00132-MTS |
| | ) |
| DR. RONALD ZAMBER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Receiver Jason Buhlinger (the "Receiver")'s Motion for Expedited Approval of Sale of Publicly Traded Securities. Doc. [222]. The Motion is fully briefed and ready for decision. *See* Docs. [225], [228], [229]. For the reasons that follow, the Court will grant it in part and authorize the sale of a portion of the securities, provided that the securities are trading at a value no lower than $82 per share.

*

On June 04, 2025, the Court appointed Receiver Jason Buhlinger for Visionary Private Equity Group I, LP (the "Fund" or "VPEG"). Doc. [88]. The Court empowered the Receiver, in part, to "take possession and control of Property belonging to the Fund to . . . prevent waste and preserve, manage, secure, and safeguard it." *Id.* at 23–24. To that end, the Court authorized the Receiver to "incur or pay expenses incidental to the Receiver's preservation and use of the Receivership Property" and to "do all the things that the Receiver may do in the exercise of ordinary business judgment, or in the ordinary course of the possession and control of Receivership Property." *Id.* at 24. Further, the Receivership Order specifies that the "Receiver's compensation shall be paid from any proceeds from the Receivership Property."

*Id.* at 28. However, the Receiver cannot "enter into any transactions that are not in the ordinary course of the Fund's business . . . without Court approval." *Id.* at 25.

Consistent with the above, the Receiver asks the Court to approve his sale of "8,205 shares of publicly traded stock of Circle Internet Group, Inc.," which has come into the Fund's possession. Doc. [222] at 2. According to the Receiver, the stock price has been quite volatile, declining "approximately 50%" from late October to late November 2025. *Id.* at 4. The Receiver believes that selling these shares "will provide stable liquidity and enable the Receiver to fulfill his duties under the Receivership Order." *Id.* at 3.[1] Further, the Receiver contends that liquidation "is necessary to protect the Receivership estate from further loss, provide liquidity for administrative expenses, and stabilize the Fund's operations." *Id.* at 4.

Plaintiffs oppose complete liquidation at this time because, in part, the stock price has risen since the Receiver filed his Motion. Doc. [228] at 3. Plaintiffs contend that a limited sale, "while holding the remaining stock," would better serve the Fund and its limited partners. *Id.* at 4. Further, Plaintiffs argue that "prioritiz[ing] [the Receiver's] administrative expenses [or] professional fees" is premature because a Motion to "assess the receiver costs against the Defendants" is pending before the Court. *Id.* Defendants oppose the sale on jurisdictional grounds. They contend that granting the relief that the Receiver seeks would impermissibly interfere with two pending appeals. Doc. [225] at 2–3. Defendants also argue that approval

---

[1] The Receiver's monthly reports to the Court have repeatedly demonstrated that the Fund has (1) a scarcity of liquid assets and (2) significant accounts payable totaling $1,964,796.29, including approximately $499,000 in fees owed to the Receiver and his counsel, at least as of last November. *See, e.g.*, Doc. [240-1] (November 2025 Monthly Operating Report); Doc. [182-1] at 26 ("VPEG does not appear to have a reliable source of cash flow and has no cash reserves.").

of the sale would inflict irreparable injury to "more than 1,000 VPEG limited partners." *Id.* at 6–7.[2]

The Court heard argument on the Receiver's Motion on December 23, 2025. Doc. [239]. During that proceeding, Plaintiffs and the Receiver expressed an interest in conferring further to try and reach a joint proposal. The Court allowed additional time to submit supplemental briefing no later than December 31, 2025. In addition, the Court allowed Defendants to file any response to that submission no later than close of business on January 02, 2026. *Id.* Plaintiffs and the Receiver filed their brief by the applicable deadline, Doc. [242], but no Response has been filed. In their joint submission, Plaintiffs and the Receiver ask the Court to approve a sale of up to $265,000 worth of Circle stock. In addition, "[o]ne or more Plaintiffs shall make a $275,000 unsecured loan . . . at 8% interest that can be used for receiver fees and expenses." *Id.* at 1–2. This would yield a general fund of $540,000, which would provide funds to pay a portion of the Receiver's outstanding fees and expenses, address certain required minimum distributions, and leave a remainder to be placed "in a reserve for other critical expenses." Doc. [242] at 2.

If approved, the Receiver agrees to use the above funds to "satisfy all currently known . . . [required minimum distribution] obligations," and the Receiver states that "he will not, without court approval, make any payments for [his] or [his counsel's] fees that result in [VPEG's] available funds dropping below $100,000." *Id.* at 3. Two key disagreements remain, however: (1) Plaintiffs' insistence that the Receiver sell the stock at a time when it is

---

[2] Based on these arguments, Defendants sought a stay of these proceedings in the U.S. Court of Appeals for the Eighth Circuit. Although the Eighth Circuit granted an administrative stay while the parties briefed the matter, Doc. [236], it ultimately declined to enter a stay pending appeal and lifted the administrative stay on December 18, 2025, Doc. [237].

trading at a value of $82 or more per share, and (2) Plaintiffs' apparent request that the Receiver pay his professional and administrative fees solely from their $275,000 loan, leaving a reserve of "approximately $114,000." *Id.* at 2–3.

When resolving the present Motion, the Court begins—as it must—with Defendants' jurisdictional arguments. Defendants are of course correct that the filing of a notice of appeal is a matter of "jurisdictional significance" because it "confers jurisdiction on the court of appeals and divests the district court or its control over those aspects of the case involved in the appeal." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 73 F.3d 819, 822 (8th Cir. 1996) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). But an important exception applies "in the kinds of cases where the court supervises a continuing course of conduct and where, as new facts develop, additional supervisory action by the court is required." *Id.* (quoting *Board of Educ. of St. Louis v. Missouri*, 936 F.2d 993, 996 (8th Cir. 1991)) (citation modified). In those cases, "an appeal from a supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken." *Id.* at 822–23. To be sure, Defendants have appealed the Court's supervisory order that appointed a receiver in this matter. Doc. [100]. But, absent a stay, that appeal does not disrupt the Court's ability to supervise the Receiver and, thereby, "act upon or modify the order from which [Defendants'] appeal is taken." *Liddell*, 73 F.3d at 823 (citation modified); *see also* Fed. R. Civ. P. 62(c)(1) (providing that, "even if an appeal is taken," a receivership is not stayed "[u]nless the court orders otherwise").

Accordingly, the Court turns to the substance of the Receiver's Motion and considers whether it should approve the desired sale. "[A] district court's power to supervise an equity

- 4 -

receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  A sale of receivership property is generally appropriate if the Court determines that the sale is in the best interest of the receivership estate.  *Cf.* 28 U.S.C. §§ 2001, 2004 (establishing prerequisites for the judicial sale of realty and personalty under a receivership).  Upon careful consideration of the parties' submissions and their statements during oral argument, the Court agrees that a limited sale of the Circle stock is in the best interest of the Fund at this time.

A limited sale will preserve a certain amount of value for the Fund while injecting critical liquidity into its operations.  To maximize the number of shares retained by the Fund, the Court will require the Receiver to sell the stock when it is trading at a value no lower than $82 per share.[3]  In addition, while the Receiver does not need the Court's approval to "incur unsecured debt" under these circumstances, Doc. [88] at 24, the Court finds it appropriate to use Plaintiffs' forthcoming $275,000 loan to pay a portion of the Receiver's outstanding professional and administrative fees. The Court "exercises large discretion in determining who shall pay the expenses of receiverships and assess the same against the funds, or against either party, or apportion them, according to the justice and equity of each case." *Fulp v. McCray*, 21 F.2d 951, 952 (8th Cir. 1927).  Here, the question of who will bear the initial responsibility for payment of the Receivership's costs is an open one currently pending before the Court, *compare* Doc. [207] (requesting the Court to assess "all costs and fees of the Receiver against

---

[3] The Court notes that, at the time of writing, the relevant stock is trading at a price of $83.43 per share. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1282 n.17 (11th Cir. 2012) ("[Courts] can take judicial notice of the price of a stock on any given day.").

the Individual Defendants"), *with Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1003 n.4 (8th Cir. 1939) (explaining that "when the [receivership] fund proves insufficient, it has been held that a court . . . may compel the party who procured the receiver . . . to pay into court a sum sufficient to meet the expenses of the receivership" (citing *McIntosh v. Ward*, 159 F. 66, 69 (7th Cir. 1907))), but the above agreement will provide the Receiver with additional funds to address a portion of his and his counsel's outstanding fees while the Court decides this issue in due course.

Finally, the Court approves the Receiver's agreement to refrain from making "any payments for [his] or [his counsel's] fees that result in [VPEG's] available funds dropping below $100,000," unless the Court orders otherwise. Doc. [242] at 3. This arrangement preserves the Receiver's ability to exercise his business judgment, "incur or pay expenses incidental to the . . . the performance of the Receiver's duties," and take his compensation from the proceeds of the Receivership Property, while helping to ensure that the Fund retains a reserve amount of liquid assets, *see* Doc. [88] at 24, 28; *see also Bowersock*, 101 F.2d at 1002 (acknowledging the "general rule" that, "where a receiver is regularly and lawfully appointed, his expenses and compensation are to be charged only against the receivership funds").

Accordingly,

**IT IS HEREBY ORDERED** that Receiver Jason Buhlinger's Motion for Expedited Approval of Sale of Publicly Traded Securities, Doc. [222], is **GRANTED** in part.

**IT IS FURTHER ORDERED** that Receiver Jason Buhlinger is **AUTHORIZED** to sell up to $265,000 of publicly traded stock of Circle Internet Group, Inc., provided that the stock is trading at a price of $82 or more per share at the time of sale.

**IT IS FURTHER ORDERED** that the Court approves of the Receiver's intent to accept an unsecured loan of $275,000 from one or more Plaintiffs to create a general fund of $540,000 when combined with the sale proceeds above.

**IT IS FINALLY ORDERED** that the Court approves of the Receiver's agreement (1) to use the above funds to satisfy all the Fund's currently known 2024 and 2025 required minimum distribution obligations, and (2) refrain from making any payments for his and his counsel's fees that result in Visionary Private Equity Group I, LP's available funds dropping below $100,000, unless otherwise ordered by the Court.

Dated this 13th day of January 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE