**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| OLIVER AND COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-cv-00132-MTS |
| | ) | |
| DR. RONALD ZAMBER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on three Motions filed by Defendant Dr. Ronald Zamber,

Defendant Robert Grenley, and Defendant Visionary Fund Manager, LLC (together,

"Defendants"): (1) their Motion to Strike the Third Amended Complaint, Doc. [187]; (2) their

Motion to Dismiss Plaintiffs' Fraud Claims, Doc. [201]; and (3) their Motion for Judgment on the

Pleadings as to Plaintiffs' Fiduciary Duty Claims, Doc. [190].  The Motions are fully briefed and

ready for decision.  *See* Docs. [198], [200], [215].  For the reasons that follow, the Court will deny

all three.

### I.      Factual Background[1]

Visionary Private Equity Group I, LP is a Missouri limited partnership marketed as

Visionary Private Equity Group ("VPEG" or "the Fund").  Doc. [177] ¶ 1.  Defendant Dr. Ronald

Zamber ("Zamber") is its Chairman, Senior Managing Director, and Founding Partner.  *Id.* ¶ 28.

---

[1] Because the Court will decline to strike Plaintiffs' Third Amended Complaint ("TAC"), the Court accepts as true the facts alleged therein for purposes of these Motions.  *See Saterdalen v. Spencer*, 725 F.3d 838, 840 (8th Cir. 2013). The Court properly considers the documents attached thereto.  *See Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) ("[A] court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint."); *see also Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) ("[D]ocuments necessarily embraced by the complaint are not matters outside the pleading.").

Defendant Robert Grenley ("Grenley") is its Director of Capital Development, *id.* ¶ 29, and Defendant Michael Cosby ("Cosby") served as its Senior Managing Director and General Counsel until his resignation, *id.* ¶ 30.[2]  Defendant Visionary Fund Manager, LLC ("VFM"), holds "the power to manage and direct the Portfolio Investments in the Fund," Doc. [177-4] at 6, and its sole members are Zamber and Cosby.  Doc. [177] ¶ 27.  VPEG is advertised as "a private equity group that invests in early stage, high growth companies that have strong management teams and the potential for significant upside." *Id.* ¶ 34.  VPEG represents that it is managed by a team "of highly respected professionals with a unique blend of private equity, investment banking, legal, medical, oil & gas, internet technology and operating experience that play an active role ensuring that [its] portfolio companies have a sound operating and capital strategy." *Id.* ¶ 35.

Plaintiffs are a subset of limited partners who have invested roughly $11 million in VPEG. *Id.* ¶ 4.  Limited partners like Plaintiffs invest in the Fund via subscription agreements, which entitle them to one limited partnership share for each dollar contributed. *Id.* ¶ 39.[3]  Plaintiffs made their initial investments from 2018 through 2023, *id.* ¶ 137, based on the Individual Defendants' "representations regarding their experience in the private equity space, investment banking, legal, medical, oil & gas, and internet technology spaces." *Id.* ¶¶ 4, 38.  In reality, the Individual Defendants lack such skills and experience. *Id.* ¶¶ 35–36.  In addition, Zamber and Grenley induced further investments from Plaintiffs, acquired short-term loans, and retained Plaintiffs' initial investments by touting VPEG's financial health and making "frequent statements that additional distributions were forthcoming soon." *Id.* ¶ 45.  The Individual Defendants also made

---

[2] The Court refers to Zamber, Grenley, and Cosby, together, as the "Individual Defendants."

[3] Plaintiffs allege that "at some time no later than 2023 and continuing into 2024, at the behest of the Individual Defendants, VPEG began offering units at a $0.67/unit price . . . instead of the $1.00/unit purchase price offered to most investors" for the Individual Defendants' "own benefit" and to "cover for [their] misconduct." Doc. [177] ¶¶ 72–73.

statements that "grossly exaggerated the performance of various portfolio companies and the Fund," and those statements "were intended to cause Plaintiffs to continue to invest in and lend money to VPEG." *Id.* ¶ 96.

For example, during a September 2022 meeting in South Bend, Indiana, Zamber and Grenley represented that "there was no debt at the Fund level," and "falsely stated that a distribution was forthcoming" at the end of that year. *Id.* ¶ 46. Similarly, Zamber and Grenley made a presentation at the Plaintiffs' annual trustee board meeting in March 2023 and "asserted that a distribution was 'right around the corner,' to be made within the next six to nine months." *Id.* ¶ 47. Following each of these meetings, Zamber and Grenley solicited short-term loans from Plaintiffs, stating that "VPEG would use to invest in the Fund and for expenses." *Id.* ¶ 40, 46–47. Instead, the Individual Defendants paid at least a portion of the loan amounts to themselves. *Id.* ¶ 40. Further, Zamber and Grenley insisted that these loans would be repaid shortly, but the loans remain unpaid. *Id.* ¶¶ 46–47. In March 2024, the Individual Defendants prepared investor presentations stating that VPEG had paid $5.8 million dollars to limited partners via prior distributions. *Id.* ¶ 48.[4] Mere months later, in June 2024, a subsequent investor presentation explained that the Fund had paid $9.1 million in distributions. Doc. [177] ¶ 48, 7.[5] Notwithstanding the $3.3 million disparity, certain Plaintiffs received "their only distributions in September 2021 totaling $310,011.00." *Id.* ¶ 44.

---

[4] The Limited Partnership Agreement ("LPA") contemplates distributions paid to limited partners. These payments may be made at the general partner's discretion, Doc. [177-4] at 9, "in proportion to the [limited partners'] respective Memorandum Accounts," Doc. [177] ¶ 43, which track the accrual of each limited partner's unreturned capital contributions, Doc. [177-4] at 25.

[5] A $9 million distribution amount is apparently reflected in VPEG's 2021 tax return. Doc. [177] ¶ 9.

The LPA requires VPEG's officers to "keep or cause to be kept complete and appropriate records and books of account" documenting the Fund's "operations, business and affairs."  Doc. [177-4] at 11.  According to the LPA, these records "shall be subject to an annual audit by an independent certified public accountant."  *Id.*  "[A]ll such books and records shall be available for inspection and copying at the reasonable request . . . of any Partner."  *Id.*  Contrary to those provisions, the Individual Defendants "never permitted an annual audit," Doc. [177] ¶ 53, and since 2021, the Individual Defendants have refused access to VPEG's financials, *id.* ¶ 56. Plaintiffs have repeatedly requested audited financial statements for the Fund to no avail.  *Id.* ¶ 58– 59.

Plaintiffs allege that the Individual Defendants have withheld this information to conceal their misconduct and mismanagement of VPEG, *id.* ¶¶ 2, 56, including the fact that, from 2020 until the present, the Individual Defendants have appropriated over $7 million of VPEG funds to pay themselves.  *Id.* ¶ 3.[6]  Payments have also been made to "people with whom Zamber had personal relationships [but] . . . provide no services to the Fund."  *Id.* ¶ 78.  And VPEG funds have been used to cover unrelated business expenses, specifically $30,000 to cover payroll and other expenditures at Zamber's eye clinic.  *Id.* ¶ 80.  Zamber and Cosby approved, authorized, and executed each of these improper payments.  *Id.*

The Individual Defendants "have also failed to report" that several of the Fund's portfolio companies are struggling or defunct.  *Id.* ¶ 74.  For example, Pop Gourmet has "failed to pay its employees and vendors among other bills," and its assets were recently noticed for a sheriff sale, *id.* ¶ 76, but the promotional materials that the Individual Defendants prepared tell a much different story.  *See* Doc. [177-1] at 11 (projecting a $2.8 million dollar revenue in 2024 and a $5.8 million

---

[6] Zamber has received over $5.2 million, Cosby has received over $1 million, and Grenley has received over $800,000. *Id.* ¶ 3.

dollar revenue in 2025). Visionary Media Group, the largest holding in VPEG's portfolio, has had many of its advisors, contractors, and vendors resign or stop services because of non-payment totaling hundreds of thousands of dollars. *Id.* ¶ 81. In addition, VPEG has invested over $5 million in Navitus Energy Group, but upon information and belief, Plaintiffs allege that the entity has sold several oil wells backing VPEG's investment. *Id.* ¶ 82–83.

Nor have the Individual Defendants reported VPEG's own corporate woes. VPEG has failed to pay its rent for its corporate office. *Id.* ¶ 86. VPEG has also failed to pay its contractors, some of whom "have reported that they are owed anywhere from $65,000 to $150,000" in backpay and expenses. *Id.* ¶ 87. And VPEG is listed as the debtor related to a lien filed by Wolters Kluwer Lien Solutions on November 12, 2024. *Id.* ¶ 85. The security pledged as collateral for VPEG's obligation includes all its assets as of the enforcement date of the security instrument. Doc. [177-6] at 4. Yet again, promotional materials prepared by the Individual Defendants paint a much different picture, including $11.8 million in capital raised during an eighteen-month period from 2023 to 2024. *See* Doc. [177-1] at 5 (explaining that the Fund "attracted $6.2 million in additional capital in 2023" and saw its "annualized 2023 [Assets Under Management] appreciate by 21.8% on a Mark-to-Market basis"); Doc. [177-2] (claiming VPEG acquired $5.4 million in new capital during the first half of 2024).

## II.    **Procedural History**

Plaintiffs initiated this action on January 31, 2025. Doc. [1]. By April 02, 2025, Plaintiffs had amended their Complaint twice-over, Docs. [10], [12], sought and received expedited discovery, Doc. [39], and filed a Motion seeking the appointment of a Receiver *pendente lite*, Doc. [47]. Soon after, Defendants entered their appearance and moved to dismiss for lack of subject-matter jurisdiction. The Court ordered expedited briefing and held a consolidated hearing on April

28, 2025.  Based on the parties' written submissions and the evidence presented, the Court dismissed Plaintiffs' derivative claims without prejudice,[7] exercised diversity jurisdiction over Plaintiffs' direct claims, and appointed Jason Buhlinger as Receiver over the Fund.  Doc. [88] at 23, 2025 WL 1580288, at *11.  On June 24, 2025, Defendant VFM appealed the Court's appointment of Receiver Buhlinger to the U.S. Court of Appeals for the Eighth Circuit.  Doc. [100].

The next day, the Defendants Zamber, Grenley, and VFM filed a Motion to Dismiss the action for failure to join Visionary PE GP I, LLC ("GP LLC")—designated as VPEG's sole General Partner—as an indispensable party.  Doc. [104]; *see* Doc. [177-4] at 4.  GP LLC filed a corresponding Motion to Intervene as matter of right.  Doc. [94].  The Court held a hearing and denied both Motions on August 04, 2025.[8]  During the hearing, Plaintiffs represented that the Court's prior dismissal of their derivative claims "change[d] some of the relief that [Plaintiffs] can and will seek" in this matter.  Doc. [170] at 43.  Plaintiffs also indicated their desire to add claims for fraud.  *Id.*  Accordingly, the Court granted Plaintiffs leave to file a Third Amended Complaint to clarify the relief sought and add their desired claims.  *Id.*  During the hearing, none of the Defendants objected to the Court's grant of leave.

GP LLC appealed the denial of its Motion to Intervene on August 20, 2025.  Doc. [162]. The Eighth Circuit has consolidated both VFM and GP LLC's interlocutory appeals, and they remain pending.  Clerk Order Consolidating Appeals, *Oliver & Co. v. Visionary Fund Manager,*

---

[7] Because a corporate entity is the real party in interest to a derivative claim, and because a limited partnership's citizenship is equivalent to citizenship of its limited partners for purposes of subject-matter jurisdiction, the Court concluded that it could not exercise diversity jurisdiction over Plaintiffs' derivative claims because VPEG and Plaintiffs have identical states of citizenship.  Doc. [88] at 14–15, 2025 WL 1580288, at *6–7.

[8] The Court concluded that it could provide meaningful relief between the present parties.  Doc. [170] at 54.  The Court also found that GP LLC's interests were adequately represented by the named Defendants because Zamber and Cosby are its sole members, *id.* at 55–56.  Accordingly, GP LLC was neither a necessary party under Federal Rule of Civil Procedure 19, nor an appropriate intervenor under Rule 24, *id.* at 57.

*LLC*, No. 25-2269 (8th Cir. Sep. 23, 2025).  On September 05, 2025, Plaintiffs filed their Third Amended Complaint ("TAC"), which asserts four counts: (1) Breach of Fiduciary Duty against all Defendants; (2) Fraudulent Inducement against all Defendants; (3) Negligent Misrepresentation against all Defendants; and (4) a claim for an Accounting against Zamber, Grenley, and Cosby. Plaintiffs seek a wide variety of relief, including compensatory damages, punitive damages, attorney's fees and costs, injunctive relief, including removal of the Individual Defendants from their roles in the Fund and the appointment of a receiver to manage the fund *pendente lite* and on a permanent basis, an order for an accounting, and "disgorgement of all compensation or other funds paid to Defendants by the Fund."  Doc. [177] at 30–31.

Now, Defendants seek to strike the TAC, arguing that the ongoing interlocutory appeals prohibit an amended complaint.  Doc. [187] at 5–6.  Subject to their Motion to Strike, Defendants move to dismiss Plaintiffs' fraud claims on the ground that they are inadequately pleaded.  Doc. [201] ¶¶ 3–4.  Defendants also move for judgment on the pleadings as to Plaintiffs' fiduciary-duty claims because certain exculpation provisions in the LPA preclude them.  Doc. [191] at 4.  The Court addresses each of these items in turn.

III.   **Discussion**

**A. Defendants' Motion to Strike the TAC**

Defendants argue that the Court must strike Plaintiffs' TAC because it impermissibly "alter[s] the status of the interlocutory appeals in this case."  Doc. [188] at 5.  More specifically, by removing VPEG as a nominal party listed in the caption and deleting the now-dismissed derivative claims, Defendants contend that the TAC displaces several jurisdictional arguments that VFM has raised before the Eighth Circuit.  *Id.* at 4.  Plaintiffs disagree, arguing that "the TAC does

nothing to disturb or affect the issues that [Visionary Fund Manager, LLC] has raised on appeal." Doc. [198] at 4. The Court concludes that Plaintiffs have the better part of the argument.

The filing of a notice of appeal is a matter of "jurisdictional significance" because it "confers jurisdiction on the court of appeals and divests the district court [of] its control over those aspects of the case involved in the appeal." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 73 F.3d 819, 822 (8th Cir. 1996) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). But district courts retain jurisdiction "with respect to any matter not involved in the appeal." *Janousek v. Doyle*, 313 F.2d 916, 920 (8th Cir. 1963) (per curiam); *accord Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) ("[I]t is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." (citing *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906))).

Here, Defendants fail to show that the TAC has any material overlap with the aspects of the case that are now before the Eighth Circuit. VFM has appealed the Court's appointment of Receiver Buhlinger pursuant to 28 U.S.C. § 1292(a)(2), which provides appellate jurisdiction over "orders appointing receivers." The key question in VFM's interlocutory appeal, then, is whether the Court abused its discretion when appointing Receiver Buhlinger in this matter. *See Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 981 (8th Cir. 2020) (standard of review). Nothing in the TAC interferes with or disturbs VFM's appeal because the TAC in no way relates to the Court's analysis of the record, its consideration of the relevant factors, and its determination that the extraordinary circumstances in this case warranted Mr. Buhlinger's appointment. Doc. [88] at 17–22, 2025 WL 1580288, at *8–11.

Further, Defendants' argument that the TAC "moots" certain jurisdictional arguments on appeal, Doc. [188] at 4, is incorrect. True, the TAC removes mention of VPEG as a nominal party

in the case, and it deletes Plaintiffs' now-dismissed derivative claims.  But neither circumstance prevents Defendant VFM from arguing—and the Eighth Circuit from later finding—that VPEG is a diversity-destroying, real party in interest to this lawsuit based on the nature of Plaintiffs' direct claims and the corresponding relief that Plaintiffs have sought.  *See, e.g.*, *Cent. Rsrv. Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 n.5 (9th Cir. 1988) (concluding that an unnamed defendant was a real party in interest that rendered diversity jurisdiction "unavailable as a basis for federal jurisdiction").  Indeed, Defendants' argument ignores the well-settled principle that a court's assessment of its own jurisdiction is not tethered to the operative complaint.  *See Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc) (explaining that courts "may look outside the pleadings to determine the threshold question of jurisdiction").

One loose end remains, whether the TAC impermissibly overlaps with or effects GP LLC's intervention-related appeal.[9]  When ruling on a Motion to Intervene, "a court focuses its intervention analysis on the underlying pleadings."  *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir. 2014).  It "should assume the plaintiff will receive the relief it seeks and, from that assumption, assess the sufficiency of the prospective intervenor's motion."  *Id.* at 973.  On appeal, a district court's "intervention determinations" are reviewed de novo.  *Id.* at 974.  Here, even though the TAC alters some of the relief Plaintiffs seek in this case, *compare* Doc. [12] at 32–33 (Second Amended Complaint), *with* Doc. [177] at 30–31 (TAC), GP LLC's appeal does not prohibit these changes, given the specific "intervention determinations" that are under appellate review, *Nat'l Parks*, 759 F.3d at 974.  Whatever the relief sought in this lawsuit and whatever the interests implicated as a result, the Court denied GP LLC's Motion to Intervene

---

[9] Defendants make no specific argument on this score, but the Court properly addresses this jurisdictional matter on its own.  *See Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) ("A federal court must, in every case and at every stage of the proceeding, satisfy itself as to its own jurisdiction." (citation modified)).

because its interests are adequately protected by the named Defendants.  Doc. [170] at 55–56 (concluding based on the factual record that Zamber and Cosby are the sole members of GP LLC). Thus, the TAC does not interfere with the specific "aspects of the case involved in the appeal." *Liddell*, 73 F.3d at 822.[10]  Therefore, for all these reasons, the Court will deny Defendants' Motion to Strike, and the TAC remains the operative Complaint in this matter.

## B.  Defendants' Motion to Dismiss Plaintiffs' Fraud Claims

The Court proceeds to consider Defendants' Motion to Dismiss, which argues that the fraud allegations in the TAC fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).  Doc. [201].  Accordingly, Defendants seek dismissal of Plaintiffs fraud claims pursuant to Rule 12(b)(6).  *Id.*  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009).  When undertaking this analysis, the Court accepts the Complaint's well-pleaded facts as true and draws all reasonable inferences in Plaintiffs' favor. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020).

Rule 9(b) imposes a "heightened pleading standard" for fraud claims.  *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) ("[A]llegations of fraud . . .  must be pleaded

---

[10] Defendants' cited cases are distinguishable because, in each one, the interlocutory appeal was taken from the denial of an immunity-premised motion to dismiss.  In those instances, each interlocutory appeal was based on whether the allegations in the original complaint entitled a government-officer defendant to immunity from suit, so both district courts lacked jurisdiction to accept an amended complaint that changed those allegations while the appeals were pending.  *Compare Wooten v. Roach*, 964 F.3d 395, 403 (5th Cir. 2020) (prosecutorial and official immunity), *with May v. Sheahan*, 226 F.3d 876, 879–80 (7th Cir. 2000) (qualified immunity).

- 10 -

with particularity." (citation omitted)). To comply, the pleading must include details such as "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp. Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Put another way, the complaint must allege the "who, what, where, when, and how" of the alleged fraud. *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021). "When the facts constituting the fraud are peculiarly within the opposing party's knowledge, however, such allegations may be pleaded on information and belief." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). The "critical inquiry" is whether the allegations supply a defendant with "enough information to adequately respond and prepare a defense." *Id.*[11]

The Court concludes that the factual allegations in the TAC are sufficient under Rule 9(b). To be sure, some of Plaintiffs' allegations describe Defendants' wrongdoing in general terms. *See, e.g.*, Doc. [177] ¶ 2, 45. But the TAC also contains specific factual allegations that, taken as a whole, adequately particularize Defendants' alleged fraud. *See id.* ¶¶ 36–38; 46–47; 54–55, 59, 62–63 (describing how Zamber, Grenley, and Cosby—both individually and when acting on behalf of VFM—made specific verbal and written statements that falsely exaggerated the performance of VPEG's portfolio companies, misstated VPEG's debts, and lied about the impending nature[12] of

---

[11] Under Missouri law, a fraud claim has nine essential elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Trimble v. Pracna*, 167 S.W.3d 706, 712 n.5 (Mo. banc 2005).

[12] A defendant is liable for representations of future acts or events when plaintiff proves "that the defendant actually knew, when making the representation as to a future event or act, that the representation was false." *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 881–82 (Mo. banc 2015).

forthcoming distributions).   Plaintiffs also allege that Cosby, at Zamber's direction, prepared incomplete financial records that failed to show[13] the amount of various liabilities related to VPEG, the status of VPEG's portfolio investments, and payments made for the benefit of the Individual Defendants.  *See id.* ¶¶ 53–56, 59; *see also OrthoAccel Techs., Inc. v. Devicix, LLC*, 0:15-cv-1503-DWF-TNL, 2015 WL 4563134, at *3 (D. Minn. July 29, 2015) (finding Rule 9(b) satisfied where plaintiff "identifie[d] specific statements made by" a corporate officer); *Solvay Pharms., Inc. v. Glob. Pharms.*, 298 F. Supp. 2d 880, 886 (D. Minn. 2004) (denying motion to dismiss where plaintiff specified misleading statements in promotional materials).  And Plaintiffs have alleged specific portfolio-company and VPEG-related shortcomings that the Individual Defendants failed to disclose or otherwise report.  *Id.* ¶¶ 76, 78, 80–81, 83, 85–89.

Plaintiffs allege that these material misrepresentations and omissions occurred (1) during a September 2022 meeting with the Plaintiffs in South Bend, Indiana, Doc. [177] ¶ 46; (2) during a March 2023 meeting in Austin, Texas, *id.* ¶ 47; (3) within March and June 2024 investor presentations prepared by the Individual Defendants, *id.* ¶ 48; and (4) within incomplete financial statements provided to the Plaintiffs in July 2024, *id.* ¶ 59.  Further, Plaintiffs allege that Zamber, Grenley, and Cosby's misstatements and omissions caused Plaintiffs to invest in VPEG to the tune of $11 million and provide specific short-term loans to VPEG.  *Id.*  ¶¶ 38, 40, 111–112.  According to the TAC, these values are specified in corresponding promissory notes and subscription agreements that the Plaintiffs executed.  *See id.* ¶¶ 39–40; *see also, e.g.*, Doc. [177-3] at 20 (setting forth a January 2023 investment of $55,000).  And, by virtue of the Individual Defendants' level of control over VPEG, and their superior knowledge of the Fund's investment practices, *id.* ¶¶ 94–95, the TAC's factual allegations plausibly show that Plaintiffs reasonably relied on Zamber,

---

[13] "[S]ilence or nondisclosure of a material fact" can form the basis of a fraud claim when the omission is "used as an inducement to another."  *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993) (Limbaugh, J.)

Grenley, and Cosby's material misrepresentations and omissions.  *See Murphy v. Springfield*, 794 S.W.2d 275, 288 (Mo. Ct. App. 1990) (explaining that the test for reasonable reliance in a fraud case is whether plaintiff used "ordinary care" when relying on defendant's representation).

Taken together, these allegations adequately describe the "who, what, where, when, and how" of Plaintiffs' fraud claims.  *Ascente*, 9 F.4th at 845.  The TAC enumerates (1) which of the Individual Defendants allegedly made material misrepresentations and omissions; (2) what misrepresentations and omissions were made; (3) when, where, and in what context they were made; (4) how the misrepresentations and omissions induced Plaintiffs; and (5) what injuries were proximately caused.  Rule 9(b) does not require further particulars or specifics under the circumstances.  *See United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (joined by Roberts, J.) (explaining that "Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years"); *see also* Fed. R. Civ. P. 9(b) (providing that "the conditions of a person's mind may be alleged generally"); *Lewey v. Vi-Jon, Inc.*, 4:11-cv-1341-JAR, 2012 WL 1859031, at *3 (E.D. Mo. May 22, 2012) (observing that Rule 9(b)'s requirements are relaxed "when the facts constituting the fraud are peculiarly within the opposing party's knowledge" (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009))).  In sum, Plaintiffs' allegations provide Defendants with sufficient notice "to adequately respond and prepare a defense."  *Ambassador Press*, 949 F.3d at 421.  Therefore, the Court will deny Defendants' Motion to Dismiss.[14]

---

[14] Because Plaintiffs do not assert any claims under federal securities laws, Defendants' arguments related to the Private Securities Litigation Reform Act ("PSLRA"), Doc. [202] at 4–7, are unavailing,  *see, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) ("[T]he PSLRA's stricter scienter requirement does not apply to state-law fraud claims."); *see also* 15 U.S.C. § 77z-2(c)(1) (providing that the PSLRA's safe harbor provision applies "in any private action arising under *this subchapter*" (emphasis added)).

**C. Motion for Judgment on the Pleadings as to Plaintiffs' Claims for Breach of Fiduciary Duty**

The Court next considers Defendants' Motion for Judgment on the Pleadings. Doc. [190]. Such relief is appropriate when, after "accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Markets, Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017). Defendants argue that the LPA's exculpation provision precludes Plaintiffs' breach of fiduciary duty claims. Doc. [191] at 4. The Court does not agree.

Defendants assert that the "LPA controls the rights and obligations of the general and limited partners of Visionary Private Equity Group I LLC [sic]," *id.* at 2, and they contend that "Missouri's Limited Liability Company Act . . . grants limited liability companies the power to effectively limit or define the scope of fiduciary duties imposed upon an LLC's members and managers," *id.* at 2 (citing Mo. Rev. Stat. §§ 347.010–347.187). Thus, so the argument goes, the LPA limits liability here because it "abrogates common law fiduciary duties and sets contractual standards for performance" for any action or inaction taken on behalf of the Fund, unless it is "determined by a final non-appealable order . . . to have been primarily caused by the fraud, gross negligence, or criminal intent of the person claiming exculpation." *Id.* at 3; Doc. [177-4] at 7.

As an initial matter, Defendants' premise is flawed for the simple reason that the Fund is a limited partnership, not a limited liability company, so the Missouri Limited Liability Company Act cannot provide a basis for their present argument. *See* Doc. [177-4] at 1 (establishing VPEG as "a Missouri Limited Partnership"); *cf.* 25 Philip G. Louis, Jr., *Missouri Practice Series, Business Organizations* § 1.2 (2d ed.) (noting that "there are substantial differences between a corporation, a partnership, a limited partnership, a registered limited liability partnership, and a limited liability

- 14 -

company"). But even after construing Defendants' argument through the lens of Missouri partnership law, *see Ebest v. Bruce*, 734 S.W.2d 915, 921 (Mo. Ct. App. 1987) (explaining that the duties of general partners and limited partners are delineated by the "limited partnership agreement, the Uniform Limited Partnership Law . . . and by reference [to] the Uniform Partnership Law"), neither the LPA nor its exculpation clause bars Plaintiffs' fiduciary-duty claims as a matter of law.[15]

The fiduciary duties that general partners owe to their limited partners primarily arise out of the nature of their relationship to one another as well as statutory law. *See A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998) (Russell, J.) (acknowledging that fiduciary duties "may arise as a matter of law by virtue of the parties' relationship"); *Ebest*, 734 S.W.2d at 922 ("[G]eneral partners are charged by statute and case law with a high fiduciary duty. Where a general partner of a limited partnership acts with complete control he stands in the same position to the limited partners as a trustee . . . to a trust."). That a limited partnership agreement exists between them does not, as a matter of law, abrogate these duties. *See Turner v. Ferguson*, 149 F.3d 821, 823 (8th Cir. 1998) (recognizing that a general-partner defendant "owed . . . a fiduciary duty to his limited partners under the terms of [the applicable] partnership agreement and also under Missouri law"). Nor does the specific exculpation clause at issue entitle Defendants to their desired relief. By its terms, the clause does not prohibit liability arising out of "fraud, gross negligence, or criminal intent." Doc. [177-4] at 7; *see Green Street 2900 Invs. v. St. Louis Woodworks, Inc.*, 654 S.W.3d 380, 388 (Mo. Ct. App. 2022) ("It is a court's duty to give effect to

---

[15] Given the factual allegations in the TAC—and the Court's factual findings elsewhere—Plaintiffs have demonstrated that the Individual Defendants, especially Zamber and Cosby, exercise sufficient control over GP LLC and have engaged in sufficient misconduct such that GP LLC's fiduciary duties may plausibly be imputed onto them. *See, e.g.*, Doc. [177] ¶¶ 94–95; Doc. [88] at 3 n.2; *see also NTD I, LLC v. Alliant Asset Mgmt. Co.*, 337 F. Supp. 3d 877, 887 (E.D. Mo. 2018) (applying Missouri law and setting forth circumstances when the fiduciary duties of a corporate-entity general partner may be imputed to an individual director).

- 15 -

the plain and ordinary meaning of contractual terms when possible."). And here, as discussed above, Plaintiffs' allegations plausibly support a finding of fraud. *See, e.g.*, Doc. [177] ¶¶ 37; 54-55, 59, 62-63. In addition, Plaintiffs have plausibly alleged grossly negligent, if not willful, misconduct on the part of Defendants. *See, e.g.*, Doc. [177] ¶¶ 97–104; *see also Sale v. Slitz*, 998 S.W.2d 159, 164 (Mo. Ct. App. 1999) ("A limitation of liability provision within a contract is ineffective in a cause of action where the conduct is willful and wanton."). Therefore, for all these reasons, the Court will deny Defendants' Motion for Judgment on the Pleadings.

## IV.    Conclusion

The Court will deny Defendants' Motion to Strike because the TAC does not violate the jurisdictional divestiture rule related the ongoing interlocutory appeals. The Court will also deny Defendants' Motion to Dismiss because the factual allegations in the TAC satisfy the specification requirements of Federal Rule of Civil Procedure 9(b). And the Court will deny Defendants' Motion for Judgment on the Pleadings because the LPA does not bar liability for fraudulent, grossly negligent, or criminal conduct, which Plaintiffs have plausibly alleged.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dr. Ronald Zamber, Defendant Robert Grenley, and Defendant Visionary Fund Manager, LLC's Motion to Strike the Third Amended Complaint, Doc. [187], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Dr. Ronald Zamber, Defendant Robert Grenley, and Defendant Visionary Fund Manager, LLC's Motion to Dismiss Plaintiffs' Fraud Claims, Doc. [201], is **DENIED**.

- 16 -

**IT IS FURTHER ORDERED** that Defendant Dr. Ronald Zamber, Defendant Robert Grenley, and Defendant Visionary Fund Manager, LLC's Motion for Judgment on the Pleadings, Doc. [190], is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant Dr. Ronald Zamber, Defendant Robert Grenley, and Defendant Visionary Fund Manager, LLC, shall have the prescribed time to respond to Plaintiffs' Third Amended Complaint.  *See* Fed. R. Civ. 15(a)(3).

Dated this 16th day of March 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE